GARRISON, Judge.
This is an appeal from a judgment of the district court granting to Marlene Jacobs damages in the amount of $100,000.00 plus damages in the amount of $2,500.00 to Edward Jacobs as tutor of the minor, Rhonda Jacobs, and damages in the amount of $10,-619.50 to Edward Jacobs. From that judgment, which we amend and affirm, both parties appeal.
A brief history of this case is in order. This court first examined the instant case *208 in 1979. See Jacobs v. N.O.P.S.I., 368 So.2d 1204 (La.App. 4th Cir., 1979). At that time, defendants appealed from the trial court’s judgment of May, 1977, granting $100,-000.00 in damages for psychological disability to Marlene Jacobs on the ground that plaintiff did not plead any psychological disability on the part of Marlene Jacobs. The Fourth Circuit reduced the amount awarded to $7,500.00 on the ground of failure to plead. The Supreme Court granted writs, reversed the ruling of the Fourth Circuit and remanded to the Fourth Circuit, ruling that “A Petition which demands damages for loss of future wages and for future pain and suffering includes damages for psychological and psychoneurotic injuries.” 369 So.2d 1376 (La., 1979). The Fourth Circuit then remanded to the trial court, using the following language: “... Defendants had no occasion to expect and therefore to defend against a claim for psychological disability .... ” 374 So.2d 167, 168 (La.App. 4th Cir., 1979). An application for writs was again taken to the Supreme Court. The Supreme Court granted the writ, stating: “The order of the Court of Appeal is amended to permit either or both sides to adduce evidence in the trial court on remand.” 376 So.2d 321 (La., 1979). The case was remanded and resulted in the judgment described at the outset herein.
Plaintiffs-appellants appeal on the issue of “mitigation and/or minimization of damages.” In his reasons for judgment, the trial judge stated:
“The Court finds from the evidence that the plaintiff, Marlene Jacobs, has a psychological disability which was precipitated by the accident.
“This accident took place in November of 1974. The first trial took place in June of 1976.
“The Court finds that the disability of Mrs. Jacobs is permanent. The Court is very disturbed however that Mrs. Jacobs has not been treated since the trial in 1976. At the time of the trial in 1976, the Court was of the opinion that the injuries were not permanent, and that with treatment, Mrs. Jacobs could return to her employment. The Court concludes that the failure of Mrs. Jacobs to seek medical treatment caused her condition to become permanent.
“For these reasons, the Court will issue a judgment fixing the damages in the same amount as in the original judgment.”
Defendant-appellant argues that no evidence was adduced at the second trial to support a $100,000.00 judgment and that likewise the judgment in favor of Mrs. Jacobs for medical expenses is incorrect and should also be reduced.
As defendant’s argument is the “threshold” argument, it shall be addressed first. Dr. Sanders testified both at the first trial and at the second that Mrs. Jacobs suffered from an anxiety neurosis and possible conversion reaction. He further testified that at the time of the first trial his prognosis was that she would probably remain in her non-functional state and that she was incapable of functioning, much less working, as a teacher. Dr. Escalada, who first saw Mrs. Jacobs in September of 1979, agreed with Dr. Sanders’ diagnosis and prognosis. Both doctors related Mrs. Jacobs’ injury to the accident at issue.
Defendant places considerable emphasis on three points:
1. That Mrs. Jacobs continued working for two years from the date of the accident until the date of her leave of absence;
2. that Mrs. Jacobs had an unhappy childhood which may have predisposed her to emotional problems; and
3. that plaintiff and her husband have “a beautiful home with an indoor pool. Somehow, however, it was suggested that they nevertheless could not afford a doctor for psychiatric treatment.”
Turning to the first point, Dr. Sanders testified that Mrs. Jacobs was a high achiever with a strong will to succeed. He further testified that she felt disgraced by seeing a psychiatrist and that she pushed herself as hard as she could to continue her former life, finally succumbing to an inevitable collapse. In his opinion, she was on a continuing decline from the date of the accident and worked through that period through sheer force of will. We further *209 note that Mrs. Jacobs was employed by the St. Bernard Parish School Board and that her daughter attended Arabi Park School in Chalmette, although the family lived in Orleans Parish. As long as Mrs. Jacobs continued teaching, the School Board would allow her daughter to remain at Arabi Park. This court does not believe that Mrs. Jacobs should be penalized for the extreme effort she made to continue her life; rather, she should be applauded for that effort. She has earned the respect of this court.
Turning to defendant’s second point of emphasis, we note that Dr. Sanders testified that many individuals have unhappy childhoods and later have lives that are perfectly normal. He further testified that, but for the accident, Mrs. Jacobs would not be suffering from anxiety neurosis. This court notes that the defendant “takes the plaintiff as he finds him.”
Defendant’s third point of emphasis also involves the argument asserted by plaintiff on appeal. Mr. Jacobs was 64 years old at the time of trial. He receives $785.00 per month from Social Security, including $385.00 per month which will terminate when Rhonda reaches age 18. Rhonda Jacobs was 17 years at the time of trial. Mr. Jacobs is a retired carpenter. He and his wife purchased the lot on which his home is built years ago for $7,000.00. He built the house in his spare time over a number of years. He had been working on the house long before the accident. The $785.00 per month is the sole family income since Mrs. Jacobs is no longer able to work. Dr. Sanders further testified that Mrs. Jacobs did not continue psychiatric treatment because the family was almost bankrupt.
Does a plaintiff’s duty to mitigate his damages include placing his family and his dependents under such economic stress as to result in bankruptcy or near bankruptcy for all members of the family? Is bankruptcy the price that a plaintiff must pay in order to recover for his damages? We think not. In Roy v. Robin, 173 So.2d 222 (La.App. 3rd Cir., 1965), the court stated:
“The tortfeasor has the burden of proving that damages should be minimized because of the injured person’s unreasonable failure to seek timely medical attention.” (emphasis added) At page 223.
In the instant appeal, we cannot say that Mrs. Jacobs’ actions were unreasonable in light of her family circumstances. Accordingly, the trial judge committed an error of law in finding that plaintiff failed to mitigate her damages.
Turning to the issue of quantum, we note that plaintiff argues that the trial judge failed to make an award for future lost wages. Mrs. Jacobs’ lost future wages, however, amount to $158,471.00.[1] Accordingly, the trial judge erroneously failed to make an award for lost future earnings due to his erroneous ruling on mitigation of damages. In so doing, he clearly abused his discretion in the amount awarded and the judgment of the district court should be increased accordingly.
For the reasons discussed, the judgment of the district court is amended as follows and, as amended, is affirmed:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Marlene Jacobs, individually, and against the defendants, New Orleans Public Service, Inc., and Julio Kaiser, jointly, severally and in solido, in the full sum of TWO HUNDRED FIFTY-EIGHT THOUSAND FOUR HUNDRED *210 SEVENTY-ONE AND NO/100 DOLLARS ($258,471.00), plus legal interest from date of judicial demand until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Edward Jacobs, as natural tutor of the minor child, Rhonda Jacobs, and against the defendants, New Orleans Public Service, Inc., and Julio Kaiser, jointly, severally, and in solido, in the full sum of TWENTY-FIVE HUNDRED AND NO/100 DOLLARS ($2,500.00), plus legal interest from date of judicial demand until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Edward Jacobs, individually, and against the defendants, New Orleans Public Service, Inc., and Julio Kaiser, jointly, severally, and in solido, in the sum of TEN THOUSAND SIX HUNDRED NINETEEN AND 50/100 DOLLARS ($10,619.50), plus legal interest from date of judicial demand until paid, and for all costs of these proceedings.

AMENDED AND AFFIRMED.

. At the trial court hearing held on May 4, 1977, Melville Wolfson testified as an economic expert on behalf of the plaintiff. Using a work life expectancy of ZVh years, Wolfson subtracted out 13 years during which she would continue to be employed as a B.A. teacher at the lower pay scale, so that plaintiff would draw retirement for 24‘A years. He then took the present value retirement figure of $5,724.00, discounted at 5% to $96,000.00, subtracting from that the present value of the same sum over the next 13 years at 5% yield at present value of her retirement loss equal to $42,341.00.
Turning to her salary loss, Wolfson determined that present value figured to be $116,-130.00. He used a base salary of $10,500.00 with a 3.1% annual increase and a discount rate of 5%. Accordingly, Wolfson testified that the present value of $116,130.00 for salary loss plus the present value of $42,341.00 for retirement loss yields a total present value of $158,471.00. (Supplemental Transcript, CA # 9446, p. 127 et seq.)