376 So.2d 532 (1979)
Ronney L. BROUSSARD, Plaintiff-Appellee,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.
No. 7117.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
*534 Hudson, Potts & Bernstein, B. Roy Luizza, Monroe, for defendant-appellant.
David A. Sheffield, Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellee.
Before GUIDRY, FORET and SWIFT, JJ.
FORET, Judge.
This is a tort suit brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. Sec. 51[1] et seq. Plaintiff, Ronney L. Broussard, a railroad brakeman, brought suit against defendant, Missouri Pacific Railroad Company, his employer, contending defendant knowingly caused plaintiff to work while he was seriously ill. Plaintiff further alleges that because of such illness, he fell and was injured, sustaining a ruptured cervical disc with resultant disability, etc. Defendant contended that plaintiff did not have an accident, and in the alternative, plaintiff was guilty of contributory negligence. This case was tried before a jury. In response to special interrogatories, the jury returned a verdict for the plaintiff and against the defendant in the amount of $120,000.00. The jury concluded that the plaintiff was 20% contributorily negligent. Accordingly, it reduced[2] the $120,000.00 by 20%, leaving a net award of $96,000.00. A judgment in such amount, together with interest, expert witness fees, and costs, was rendered.
Defendant filed a motion for a new trial which was heard and denied by the trial court. Defendant now prosecutes this appeal from the jury verdict.
ASSIGNMENT OF ERROR # 1
Appellant urges that one of the jurors, a Mr. Robert Smith, should have been excluded *535 from the jury for cause[3]. It is the contention of the appellant that the juror was biased, having a fixed opinion that any employee who is injured on the job is entitled to compensation. The trial judge observed and heard the entire interrogation conducted on the voir dire. He found no basis to conclude that Mr. Smith was biased or that he could not or would not perform his duty as a juror according to law.
The trial judge has broad discretion in passing upon the qualifications of jurors and his ruling on such matters should not be disturbed unless there is a clear abuse of discretion. Druilhet v. Comeaux, 317 So.2d 270 (La.App. 3 Cir. 1975); Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224 (La.App. 3 Cir. 1974).
We are of the opinion that prospective juror Smith was indeed confused and apparently stuck to his notion that if plaintiff was injured on the job, that he is entitled to compensation. He apparently had the issue in this case confused with a case of workmen's compensation as distinguished from a tort action. We believe that the trial court erred in his refusal to excuse this juror for cause. Nevertheless, assuming some confusion may have existed on the part of Mr. Smith in understanding concepts presented to him in this litigation, there is no evidence supporting an inference that more than one juror was confused. In this case, only nine of the twelve jurors needed to concur to render a verdict. LSA-CCP Art. 1795. We find it significant that this verdict was rendered by a unanimous jury. Appellant urges that this case should be remanded to the trial court due to the alleged error committed by the trial judge in the jury selection process. We disagree. The scope of review of Louisiana courts of appeal extends to both law and facts[4]. Therefore, errors committed in the jury selection process may be corrected on appeal[5].
ASSIGNMENT OF ERROR # 2
Appellant next argues that plaintiff's counsel's closing argument was improper and that the trial court erred in not instructing plaintiff's counsel and the jury concerning the alleged impropriety of this argument.
The colloquy giving rise to this assignment occurred while counsel for plaintiff was delivering his closing argument and reads in part:
". . .
How much is it worth to suffer for twenty minutes?
How much would you take? So much a minute? A day?" (Tr., pg. 30)
Defendant's counsel lodged an objection which was sustained.
Counsel for plaintiff continued,
". . .
Would you do it for that much each month?
. . . Would you go through, for that operation, for $6,000.00?" (Tr., pg. 831, 832)
Again, defendant's counsel's objection was sustained. Defendant then asked that instructions be given to plaintiff's counsel regarding his closing remarks to which the court replied,
"Sustained, Mr. Sheffield."
Counsel for plaintiff continued,
". . .
How much would you be willing to take for that risk? $20,000.00? $30,000.00? (Tr., pg. 833)
Again defense counsel's objection was sustained and again the court advised plaintiff's counsel as to his argument.
In cases or actions brought under Title 45, U.S.C., Sec. 51 et seq., the law to be applied concerning the propriety of counsel's argument to the jury is federal rather than state law. Sharkey v. Penn Central *536 Transportation Co., 493 F.2d 685 (2 Cir. 1974); Duncan v. St. Louis-San Francisco Railway Co., 480 F.2d 79 (8th Cir. 1973), cert. denied 414 U.S. 859, 94 S.Ct. 69, 39 L.Ed.2d 109.
Under federal law, counsel has great latitude in making arguments to the jury and considerable discretion is given to the trial court to control these arguments. Commercial Credit Equipment Corp. v. L & A Contracting Co., Inc., 549 F.2d 979 (5th Cir. 1977); Schleunes v. American Casualty Co. of Reading, Pennsylvania, 528 F.2d 634 (5th Cir. 1976); Duncan, supra.
In Waldron v. Hardwick[6], the court held that counsel's argument suggesting to the jury a specific sum per day for plaintiff's pain and suffering did not constitute reversible error, despite the absence of a cautionary instruction, where the verdict was not excessive. In view of the cited jurisprudence, we find this assignment without merit.
ASSIGNMENT OF ERROR # 3
The third assignment of error urged by the defendant is that the trial court erred in overruling his motion for a directed verdict. Under LSA-CCP Art. 1810, the trial judge has much discretion in determining whether or not a motion for a directed verdict should be granted. We therefore find appellant's third assignment of error also without merit.
ASSIGNMENT OF ERROR # 4
Appellant next argues that the jury erred in finding negligence on the part of the defendant.
On March 17, 1977, the plaintiff, Mr. Broussard, was contacted by Mr. Tillmon V. May, an employee of Missouri Pacific Railroad. Mr. May was then the "crew caller" for the Alexandria yard. Mr. May told Mr. Broussard that he was to report to work on the morning of March 17 to act as brakeman on a train going to Monroe, Louisiana. Mr. Broussard then informed Mr. May that he was too ill to work and requested that he be allowed to remain home. He also requested that a Mr. Jeff Golliher be called to go in his place. After some discussion and a call to Mr. Golliher, Mr. May informed Mr. Broussard that he would have to make the run. Mr. Broussard, fearing retaliation for his not going to work, reported as directed by Mr. May even though he was ill. There is sufficient evidence in the record to support the jury's finding that the defendant-employer pressured plaintiff into reporting for duty on March 17, 1977. There is also sufficient testimony in the record corroborating Mr. Broussard's testimony that he was ill when he reported to work and was ill when he returned on the following day. Dr. Hubert L. Prevost examined Mr. Broussard on March 18, 1977. Dr. Prevost found that Mr. Broussard had a flu-like syndrome with chills, fever, aches, cough, sore throat, headache, and a finding of coryza, slightly nasal and pharyngeal mucosa. A blood count was also made. The count was essentially normal except that the differential count was compatible with a viral infection.
Mr. Broussard testified that he was injured while standing in the caboose of the train on which he was working. He fell backwards against the back wall of the caboose when the train moved forward. He explained that due to his weakened condition, he was unable to hold on to the hand rail and maintain his balance and was subsequently injured when he fell. There is also ample evidence in the record to support the jury's finding that Mr. Broussard acted prudently in trying to get off of work. Mr. Broussard testified that he spoke with a Mr. Ragland, who is a yard master at the Monroe office, as to the possibility of he, Mr. Broussard, getting some relief. Mr. Broussard further testified that Mr. Ragland said there was no relief available and that he should make the trip back to Alexandria.
Additionally, there is testimony by fellow employees of Broussard which corroborates his statements to the effect that he was too ill and too weak to perform his job on March 17 and 18 of 1977.
*537 In summary, and after a review of the trial record, we find that there is ample evidence for the jury to have concluded that Mr. Broussard was too ill to report to work and that his employer, Missouri Pacific Railroad, was negligent in ordering him to work. Likewise the jury's determination that Mr. Broussard's illness directly contributed to the injuries he received on March 18, 1977, is neither untenable nor unfounded.
Federal, not state, law governs actions brought under the Federal Employers Liability Act. Dugas v. Kan City Southern Railway Lines, 473 F.2d 821 (5th Cir. 1973), cert. denied 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56; Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970). It is well established that the role of the jury is significantly greater in Federal Employers Liability Act cases than in common law negligence actions. Rogers v. Missouri-Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Eggert v. Norfolk and Western Railway Co., 538 F.2d 509 (2nd Cir. 1976); Eaton v. Long Island Railroad Co., 398 F.2d 738 (2nd Cir. 1968). We must therefore give great weight to the jury's verdict.
In testing the sufficiency of evidence to sustain a jury verdict, the court of appeal is bound to view the evidence in the light most favorable to the party who has prevailed in the trial court and to resolve all reasonable inferences in favor of that party. Alabama Great Southern Railroad Co. v. Chicago and Northwestern Railway Co., 493 F.2d 979 (8th Cir. 1974); Duncan v. St. Louis-San Francisco Railway Co., supra.
A jury verdict should be maintained unless the record reflects that the jury's conclusions of fact are not supported by the evidence or its application of the law is clearly erroneous. In absence of manifest error the appellate court is not to disturb on appeal the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict. Plaisance v. Collins, 365 So.2d 608 (La.App. 1 Cir. 1978); Moreaux v. Argonaut Ins. Co., 350 So.2d 240 (La.App. 3 Cir. 1977), writ refused, 351 So.2d 776. After a review of the facts contained in the record, we find that there is sufficient evidence from which the jury could have concluded as they did.
ASSIGNMENT OF ERROR # 5
The defendant contends that the jury award of $120,000.00 to plaintiff was excessive.
Pursuant to special interrogatories, the jury awarded to the plaintiff $35,000.00 for loss of past earnings, $30,000.00 for loss of future earnings, $55,000.00 for general damages, for a total of $120,000.00. However, inasmuch as the jury found the plaintiff to be 20% contributorily negligent, judgment was granted in favor of plaintiff in the amount of $96,000.00.
To support his claim for damages, plaintiff relies on the testimony of several witnesses, and on the testimony of Dr. John D. Jackson.
Mr. Broussard was seen by a Dr. Weiss, on or about March 18, 1977. Dr. Weiss found no abnormality with regard to plaintiff's neck and spine, but referred him to Dr. Chester Fresh for continued treatment. Dr. Fresh first saw plaintiff on July 13, 1977. Dr. Fresh also found no abnormality as to plaintiff's neck or spine. Plaintiff was then treated with a course of head-halter traction and was given a muscle relaxant and a cervical pillow.
Because of persistent pain, plaintiff was admitted to Rapides General Hospital on April 21, 1977, and was subsequently seen by another neuro-surgeon. A cervical myelogram was performed which, according to plaintiff, was negative. He was then discharged from the hospital and continued seeing Dr. Weiss.
Plaintiff's pain continued. He was then sent to Dr. Robert Martinez, a neurologist in Lafayette. An electromyogram was performed, as was a nerve condition study. Both Dr. Fresh and Dr. Martinez felt these were negative.
Subsequently, Mr. Broussard was examined by Dr. John D. Jackson on November *538 1, 1977. Dr. Jackson found that the plaintiff had a completely normal neurological exam in every respect. A myelogram had been performed on Mr. Broussard at the Rapides General Hospital on May 2, 1977. After close scrutiny of the results of this test, Dr. Jackson concluded that Mr. Broussard had a slight but definite defect at the C-4-5 level of his spine. He then performed a discogram. In Dr. Jackson's opinion, this test confirmed that Mr. Broussard was suffering from a ruptured disc at the C-4-5 level. Dr. Jackson concluded that surgery would alleviate the condition. He stated that Mr. Broussard would be able to return to work and could perform hard labor within six weeks to two months after the surgery. Dr. Jackson also stated that Mr. Broussard would probably have 10% loss of motion of his neck. However, Mr. Broussard did not undergo surgery for this injury.
Defendant Railroad Company vigorously urges the obligation of an injured party to submit to reasonable medical treatment, including surgery, to minimize his damages; and that we should, in this case, eliminate the jury award of $30,000.00 for loss of future earnings. We have noted and scrutinized the Louisiana jurisprudence on this point. Particularly, we have examined Donovan v. New Orleans Railway and Light Co., 132 La. 239, 61 So. 216 (1913); Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1 Cir. 1974), writ denied, 305 So.2d 123 (La.); Welch v. Ratts, 235 So.2d 422 (La.App. 2 Cir. 1970); Reeves v. Travelers Ins. Co., 329 So.2d 876 (La.App. 2 Cir. 1976).
Dr. Jackson stated that he had performed the recommended operation approximately 1100 times, and that it was considered to be a very low-risk type surgery. Additionally, he testified that the plaintiff's prognosis, post-surgery, was excellent, and that plaintiff could return to hard manual labor six to eight weeks after surgery.
At first blush, it appears that the jury erred in awarding Broussard $30,000.00 for loss of future earnings, when he himself has apparently either refused or neglected to submit to the surgery. However, we also note that plaintiff's pre-injury salary was approximately $2,000.00 per month, or $24,000.00 per year. In this particular case, the jury only awarded $24,000.00 ($30,000.00 reduced by 20%) for loss of future earnings. We can surmise that they took into consideration the fact that plaintiff should either submit to surgery, and would likely do so within a year's time, and accordingly awarded him only one year's loss of future earnings. On the other hand, however, the jury may have considered the fact that he could have some 10% disability after surgery, as testified to by Dr. Jackson, and that he may sustain some slight loss of earnings for the rest of his life (plaintiff is a 27-year-old man). Considering the totality of the awards, we are of the opinion that no manifest error was made by the jury, and the said verdict should be affirmed.[7]
In reference to the scope of review by state courts in the reviewing of federal statutory actions, such as FELA and maritime cases tried in state courts, the same scope of review applies to state courts as is applicable in the federal courts. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971); Benoit v. Fireman's Fund Ins. Co., 361 So.2d 1332 (La.App. 3 Cir. 1978); Verret v. Chotin Transportation, Inc., 356 So.2d 1067 (La.App. 3 Cir. 1978); Hocut v. Insurance Co. of North America, 254 So.2d 108 (La.App. 3 Cir. 1971).
In Trahan, the Supreme Court stated that:
"Accordingly, although Louisiana appellate courts have the constitutional authority to review both the law and the facts of a case, they may not, under federal law and jurisprudence, disturb the finding of [the] trial jury on the merits in such cases unless there is no reasonable basis for the jury's conclusion . . . . `Only [where] there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * * there is an *539 evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent . . ."
For the reasons stated above, the judgment of the trial court in favor of plaintiff, Ronney L. Broussard, is affirmed; all costs of this appeal are assessed against the defendant, Missouri Pacific Railway Company.
AFFIRMED.
NOTES
[1] § 51. Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence; definition of employees

Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, truck, roadbed, works, boats, wharves, or other equipment.
Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.
[2] 45 U.S.C. § 53.
[3] Appellant complains that he had to use a peremptory challenge to excuse Smith, and was thereby prejudiced.
[4] LSA-Const., Art. 5, Sec. 10(B).
[5] See DeSalvo v. Rizza, 272 So.2d 27 (La.App. 4 Cir. 1972), writ refused, 275 So.2d 781 (La.).
[6] 406 F.2d 86 (7th Cir. 1969).
[7] Reck v. Stevens, 373 So.2d 498 (La.1979).